UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-00117-GNS-CHL

R&J OIL, et al.                                                                                           PLAINTIFFS

v.

R.C. RODGERS, et al.                                                                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment (DN 42) on Counts V and VI of their Complaint (DN 1). The motion is ripe for adjudication. For the reasons that follow, the motion is **GRANTED**.

### I.  STATEMENT OF FACTS AND CLAIMS

Plaintiffs Keith and Nikkoll Johnson are residents of Ohio who decided to invest in the oil and gas industry in hopes of enhancing their retirement savings. (Pls.' Mem. Supp. Mot. Partial Summ. J. 1, DN 43 [hereinafter Pls.' Mot.]).[1] Plaintiffs entered into a "Refurbishing Contract Agreement" with John Patterson ("Patterson") and Defendants Ronnie Charles Rodgers ("Rodgers") and R&R Plus, LLC ("R&R Plus"), a Tennessee limited liability company of which Rodgers was the sole member. (Pls.' Mem. Supp. Mot. Partial Summ. J. Ex. A, at 1, DN 43-1; Compl. ¶¶ 4, 8, DN 1). The Refurbishing Contract Agreement provided that Rodgers and R&R Plus would transfer mineral rights to a 67-acre tract in Tennessee, along with an existing well and associated personalty, and refurbish the existing well. (Pls.' Mem. Supp. Mot. Partial Summ. J.

---

[1] The Johnsons and the limited liability company of which they are the sole members, R&J Oil, LLC, are jointly referred to as "Plaintiffs."

1

Ex. A, at 1-3). Patterson, who is not a party to this action, was to check the wells and remove the oil. (Pls.' Mem. Supp. Mot. Partial Summ. J. Ex. A, at 3).

Plaintiffs, Rodgers, and R&R Plus entered into a separate "Escrow Agreement" to accomplish the transfer of the mineral rights, designating Defendant Elmer George ("George") a party to the contract as the escrow agent.[2] (Pls.' Mem. Supp. Mot. Partial Summ. J. Ex. B, at 1, DN 43-2). The Escrow Agreement provided that Plaintiffs would deposit $105,000 with George, who was not to release the funds "until receipt from the Parties of all documents, properly completed and executed, necessary to affect [sic] the transfer of ownership or assignment of the Oil and Gas Lease, including but not limited to the Assignment of Oil and Gas Lease and Refurbishing [Contract] Agreement between First Party and Second Parties herein . . . ." (Pls.' Mem. Supp. Mot. Partial Summ. J. Ex. B, at 1). The Escrow Agreement further stated that in the event the transfer documents were not received within thirty days, George was to return the escrow funds to Plaintiffs. (Pls.' Mem. Supp. Mot. Partial Summ. J. Ex. B, at 1).

Plaintiffs, Rodgers, and R&R Plus also signed a document titled "Assignment of Oil and Gas Lease" ("Assignment"). (Pls.' Mem. Supp. Mot. Partial Summ. J. Ex. C, at 1, DN 43-3). Notwithstanding the nominal caption, the Assignment conveyed only an 87.5% working interest in a particular well (#12313) and did not include transfer of the referenced oil and gas lease. (Pls.' Mem. Supp. Mot. Partial Summ. J. Ex. C, at 1). Nevertheless, upon receipt of the executed Assignment and Refurbishing Contract Agreement, George disbursed the escrowed funds. (George Aff. ¶ 27).

---

[2] George, an attorney licensed in Kentucky, prepared all of the documents associated with these transactions.

Notably, before closing it was necessary for Rodgers and R&R Plus to obtain the leasehold interest they were obligated to transfer to Plaintiffs under the terms of the Refurbishing Contract Agreement. George effected this transfer by drafting a document ("Adventure Assignment") conveying Adventure Enterprises, Inc.'s interest in the well and lease to Rodgers and R&R Plus. (Pls.' Mem. Supp. Mot. Partial Summ. J. Ex. D, at 1, DN 43-4). The language of the Adventure Assignment assigned to Rodgers and R&R Plus all of Adventure Enterprises' interests in both the "well and Oil and Gas Lease . . . ." (Pls.' Mem. Supp. Mot. Partial Summ. J. Ex. D, at 1). Indeed, before preparing either transfer, George consulted John Nisbet, Adventure Enterprises' Tennessee attorney, who provided a written title abstract to George and advised that, "[b]ecause [Rodgers] is purchasing BOTH the well and lease, I would suggest that you include a paragraph about the lease." (Pls.' Reply Mot. Partial Summ. J. Ex. 1, at 1, DN 50-1 (emphasis in original)).

After the closing, relations between Plaintiffs and Rodgers ultimately fell apart. Plaintiffs allege Rodgers failed to meet his obligations under the Refurbishing Contract Agreement. (Pls.' Mot. 7). The well was eventually filled with concrete and the permit necessary to drill was temporarily lost. (Pls.' Mot. 7). In this lawsuit, Plaintiffs assert claims against George because he failed to accomplish the transfer of the oil and gas lease to them from Rodgers as specified in the Escrow Agreement. (Compl. ¶¶ 56-65). Plaintiffs have moved for summary judgment on those claims.

## II.     JURISDICTION

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount in controversy exceeds the sum of $75,000.00.

## III. STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. Indemnification for Breach of Contract Claims

As an initial matter, the pending motion implicates the Escrow Agreement's indemnification clause.[3] This provision provides:

> First Party agrees to indemnify and hold harmless the Escrow Agent from any and all claims, liabilities, losses, expenses, actions, suits, or proceedings at law or in equity, or any other expense, fees, or charges of any character or nature whatever that it may incur by reason of acting as the Escrow Agent under this Escrow Agreement except for the Escrow Agent's gross negligence, bad faith or willful misconduct.

(Pls.' Mem. Supp. Mot. Partial Summ. J. Ex. B, at 1-2). In this instance, Plaintiffs are the First Party asserting a breach of contract claim against the Escrow Agent, George. George argues that the quoted indemnity provision shields him from this claim. (Def.'s Resp. Pls.' Mot. Summ. J. 11-16, DN 49).

"Indemnify" is defined as "[t]o reimburse (another) for a loss suffered because of a third party's or one's own act or default." *Black's Law Dictionary* 886 (10th ed. 2014); *CHS, Inc. v. Yellow Banks River Terminal, LLC*, No. 4:16-cv-151-JHM, 2017 WL 4542225, at *4 (W.D. Ky. Oct. 6, 2017) (citation omitted). In this instance, there is no third-party claim—both Plaintiffs and George were parties to the Escrow Agreement—nor did Plaintiffs default on their obligations under the Escrow Agreement. As such, the concept of indemnity does not fit here. *See Am. Towers LLC v. BPI Inc.*, 130 F. Supp. 3d 1024, 1037 (E.D. Ky. 2015) ("BPI's indemnification duty is triggered by a third-party claim against ATC—that is the nature of indemnification agreements."). Even if the indemnity provision purported to protect George from this claim, "a party to a contract

---

[3] Kentucky state law forms the substantive law used to evaluate Plaintiffs' claims. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) ("[F]ederal courts sitting in diversity 'apply state substantive law and federal procedural law.'" (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965))).

cannot recover indemnification from another contracting party for a breach which the first party caused or substantially helped to cause." *Turner v. Glob. Seas, Inc.*, 505 F.2d 751, 754 (6th Cir. 1974).

Plaintiffs allege here that George breached the Escrow Agreement. (Compl. ¶ 56). Distilled, George's defense is that Plaintiffs must indemnify him for the damage that he caused Plaintiffs through George's alleged breach of the Escrow Agreement. While no Kentucky case is squarely on all fours with the present matter, Kentucky law strongly disfavors an interpretation of a contract that would either render the contract a nullity or fail to give effect to the intent of the parties. *Henderson v. Cont'l Cas. Co.*, 39 S.W.2d 209, 211 (Ky. 1935). In this instance, requiring the buyers to protect their escrow agent from his own misfeasance would operate effectively to relieve their agent of any obligation to perform his duties. Nullification of George's duties is untenable. Kentucky courts strive to avoid interpretations of contracts resulting in an illusory promise, "that is, a promise merely in form, but in actuality not promising anything, [which] cannot serve as consideration." *Maze v. Bd. of Dirs. for Commonwealth Postsecondary Educ. Prepaid Tuition Tr. Fund*, 559 S.W.3d 354, 367-68 (Ky. 2018). Accepting George's contention that he cannot be held liable for his breach of the Escrow Agreement would render his promises illusory. *See Commercial Movie Rental, Inc. v. Larry Eagle, Inc.*, 738 F. Supp. 227, 230-31 (W.D. Mich. 1989) ("The unambiguous terms of the contract at issue here exempt [Defendant] from all liability for a breach of its obligations. Commercial's promise to perform is, therefore, entirely illusory because, under the unambiguous terms of the contract it drafted, Commercial could never be held liable for the failure to perform those promises.").

George believes the indemnity provision relieves him of any responsibility under the Escrow Agreement. However, "[a] party cannot promise to act in a certain manner in one portion

6

of a contract and then exculpate itself from liability for breach of that very promise in another part of the contract." *Jewelers Mut. Ins. Co. v. Firstar Bank Ill.*, 820 N.E.2d 411, 416 (Ill. 2004) (citing *Shorr Paper Prods., Inc. v. Aurora Elevator, Inc.*, 555 N.E.2d 735, 737-38 (Ill. App. Ct. 1990) (criticizing the defendant for focusing solely on exculpatory provision of contract to the exclusion of its specifically articulated obligations, noting that such an interpretation would render defendant's contractual duties illusory); *Contact Lenses Unlimited, Inc. v. Johnson*, 531 N.E.2d 928, 931 (Ill. App. Ct. 1988) (holding that contractual requirements imposed upon the defendant would be meaningless if the defendant could ignore those provisions with no penalty)); *see also* 17A Am. Jur. 2d *Contracts* § 281 (Nov. 2019 update) ("An exculpatory agreement will be held to contravene public policy if it is so broad that it would absolve the defendant from any injury to the plaintiff for any reason." (citing *Richards v. Richards*, 513 N.W.2d 118, 121 (Wis. 1994))).

The Court therefore concludes that Plaintiffs are not required to indemnify George against his own breach of the Escrow Agreement.

### B. <u>Breach of Contract</u>

The next issue is whether the undisputed facts establish that George breached the Escrow Agreement. Kentucky law recognizes that escrow agreements are created when parties make known to a depositary that they wish the depositary to hold something in escrow until satisfaction of a certain condition or conditions. *Home Ins. Co. of N.Y. v. Wilson*, 275 S.W. 691, 693 (Ky. 1925). "There is no question of the liability of an escrow holder if he violates the requirements of the contract." *Southern v. Chase State Bank*, 61 P.2d 1340, 1342 (Kan. 1936); *see also Vaughan v. Vaughan*, 170 S.W. 981, 983 (Ky. 1914).

The evidence in this case is clear. In the Refurbishing Contract Agreement, Rodgers and R&R Plus "agree[d] to assign unto [Plaintiffs] 67 acres, more or less, of mostly vacant land, one

(1) existing oil well (#12313), two hundred ten (210) barrel tanks, pump-jacks and complete equipment, and all mineral rights thereupon such property . . . ." (Pls.' Mem. Supp. Mot. Partial Summ. J. Ex. A, at 1-3). The Escrow Agreement between Plaintiffs and George provides in relevant part:

> [Rodgers and R&R Plus] have agreed to hereby sell and convey [their] interest in an Oil and Gas Lease . . . .
>
> The Escrow Agent shall not release any proceeds until receipt from the Parties of all documents, properly completed and executed, necessary to affect [sic] the transfer of ownership or assignment of the Oil and Gas Lease, including but not limited to the Assignment of Oil and Gas Lease and Refurbishing Agreement between [Plaintiffs] and [Rodgers and R&R plus] herein have been received.

(Pls.' Mem. Supp. Mot. Partial Summ. J. Ex. B, at 1) (emphasis added).

George was obliged by the express terms of the Escrow Agreement to hold Plaintiffs' funds until the documents conveying the interests of Rodgers and R&R Plus in the well *and* the oil and gas lease were executed. This did not occur. Instead, although Adventure Enterprises, Inc. assigned to R&R Plus and Rodgers "all its working interest in the following well *and* Oil and Gas Lease[,]" R&R Plus and Rodgers assigned to Plaintiffs their interest in one well but **not** any interest in the oil and gas lease:

> [Rodgers and R&R Plus] hereby agree to sell, assign, transfer, and convey unto [Plaintiffs] a 87.5% working interest in the following *well*:
>
> > Landowner: Ralph Bowden and Wheeler Bowden #2, Well State Permit # 12313

(Pls.' Mem. Supp. Mot. Partial Summ. J. Ex D, at 1 (emphasis added); Pls.' Mem. Supp. Mot. Partial Summ. J. Ex. C, at 1 (emphasis added)). George released the funds, even though Plaintiffs never received the "transfer of ownership or assignment of the Oil and Gas Lease," which violated the terms of the Escrow Agreement. On the issue of liability for breach of contract, the Court

8

concludes that George breached the terms of the Escrow Agreement as a matter of law. Therefore, the Court will grant summary judgment for Plaintiffs on Count V.

## C. Indemnification for Breach of Fiduciary Duty Claims

As noted above, Plaintiffs cannot be required to indemnify George against his own obligations as a party to the contract. However, indemnification against contractual violations and indemnification against tortious conduct require separate considerations. *See Ky. Farm Bureau Mut. Ins. Co. v. Blevins*, 268 S.W.3d 368, 374-75 (Ky. 2008). The Court must therefore address whether the indemnification provision was valid as to George's allegedly tortious conduct.

Kentucky law holds that when interpreting an indemnification provision, every presumption should be against the contention that the provision intends to indemnify the indemnitee against his own negligent acts. *Mitchell v. S. Ry. Co.*, 74 S.W. 216, 217 (Ky. 1903). With respect to transactions between businesses, "such clauses are not against public policy . . . ." *Fosson v. Ashland Oil & Refining Co.*, 309 S.W.2d 176, 178 (Ky. 1957) (citing *Luton Mining Co. v. Louisville & Nashville R.R. Co.*, 123 S.W.2d 1055, 1059 (Ky. 1938)). If, however, one party is in a "clearly inferior bargaining position," Kentucky courts are much more likely to invalidate such provisions. *Speedway SuperAmerica, LLC v. Erwin*, 250 S.W.3d 339, 344 (Ky. App. 2008).

In these situations, courts consider disparities in the parties' education as well as whether the terms of the contract are particularly one-sided. *Id.* at 342. George enjoyed a superior bargaining position in this situation by virtue of his training and experience as an attorney. Escrow agents are utilized for many types of real estate transactions, and upholding this indemnification provision would allow escrow agents to absolve themselves of nearly any liability resulting from the performance of their duties. Moreover, it is "not only important for the court to consider the language employed in the contract, but the circumstances surrounding the parties, and the object

in view which induced the making of it." *Mitchell*, 74 S.W. at 217. Courts examining such provisions should assess the probability that one party would agree to indemnify the other against the other party's own negligence. *Erwin*, 250 S.W.3d at 343; *Fosson*, 309 S.W.2d at 178. As discussed above, it is inconceivable that Plaintiffs would have agreed to entrust George with their retirement savings if they understood that George would not be held responsible in the event he failed to perform his duties. Such unlikelihood weighs against enforcement of the indemnification provision.

Finally, enforcement of the indemnification provision is wholly inconsistent with George's fiduciary duties as an attorney serving as an escrow agent. This "duty is imposed by law, not by the terms of the contract." *Jaffee v. Davis*, No. 2001-CA-000817-MR, 2003 WL 2002783, at *5 (Ky. App. May 2, 2003). This legal imposition of responsibility led the court in *Jaffee to* hold that the plaintiff could assert a breach of fiduciary duty claim notwithstanding a contractual provision establishing gross negligence or willful bad faith as the governing standard of care. *Id.* Additionally, a member of the bar serving as an escrow agent is "subject to an expectation of a greater degree of integrity than the average nonprofessional person acting in the same capacity." *Fisk v. People's Liberty Bank & Tr. Co.*, 570 S.W.2d 657, 660 (Ky. 1978). As a result, the Kentucky Supreme Court has held that an attorney acting as an escrow agent is subject to the laws governing fiduciaries. *Ky. Bar Ass'n v. Dixon*, 373 S.W.3d 444, 447 (Ky. 2012).

"A fiduciary duty is 'the highest order of duty imposed by law.'" *Abbott v. Chesley*, 413 S.W.3d 589, 600 (Ky. 2013) (quoting *In re Sallee*, 286 F.3d 878, 891 (6th Cir. 2002)). It goes beyond the ordinary duty of reasonable care. *Associated Ins. Serv., Inc. v. Garcia*, 307 S.W.3d 58, 63 (Ky. 2010). A fiduciary relationship is "founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which

a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 485 (Ky. 1991).

It is well-established that an escrow agent must act pursuant to the conditions set forth in the escrow agreement, and failure to do so results in liability. *Day & Night Nat'l Bank of Pikeville v. Blei*, 57 S.W.2d 641, 642-43 (Ky. 1933) (citation omitted). One of the principal fiduciary duties of an escrow agent is "the duty to exercise a high degree of care to conserve the money and pay it only to those persons entitled to receive it." *Trevino v. Brookhill Capital Res., Inc.*, 782 S.W.2d 279, 281 (Tex. Ct. App. 1989) (citation omitted).

Kentucky law is clear that a fiduciary owes more than an ordinary duty of care, and George cannot relieve himself of this duty by inserting a clause into the Escrow Agreement purporting to hold him to a lesser standard. For these reasons, the Court concludes George cannot require Plaintiffs to indemnify him against their claims for his own tortious conduct.

### D. Breach of Fiduciary Duty

The final issue is whether George breached his fiduciary duty to Plaintiffs as a matter of law. George's most basic responsibility was to hold Plaintiffs' money in escrow until the oil and gas lease had been transferred. The Assignment, however, did not transfer any interest in the oil and gas lease and therefore did not satisfy George's duty not to transfer any funds until receipt of all documents "necessary to [e]ffect the transfer of ownership or assignment of the Oil and Gas Lease . . . ." (Pls.' Mem. Supp. Mot. Partial Summ. J. Ex. B, at 1). He did not comply with the terms of the Escrow Agreement which *he* drafted, and in failing to do so breached the trust Plaintiffs reposed in him as escrow agent. *Steelvest*, 807 S.W.2d at 485. It is noteworthy that the documents George prepared *did* effect the transfer of Adventure Enterprises' interest in the oil and gas lease *to Rodgers and R&R Plus*. It is unclear why this same interest was excluded from the

11

conveyance from Rodgers and R&R Plus to Plaintiffs, who received only rights to Well # 12313 by the terms of the Assignment. Although George seems to fault his staff for the mistake, the fact that George's employee may have committed the gaffe certainly does not excuse George's failure to properly document the transfer of the oil and gas lease to Plaintiffs. *See In re Estate of Divine*, 635 N.E.2d 581, 587 (Ill. App. Ct. 1994) ("[T]he idea that an attorney is liable, in malpractice or as an ethical violation, for his paralegal's acts is well-supported . . . ."); *Musselman v. Willoughby Corp.*, 337 S.E.2d 724, 728 (Va. 1985) (attorney held liable for paralegal's error). Therefore, the Court concludes that George's actions constitute a breach of fiduciary duty as a matter of law.

## V.  CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Partial Summary Judgment (DN 42) on Counts V and VI of their Complaint (DN 1) is **GRANTED**.

Greg N. Stivers, Chief Judge
United States District Court

January 10, 2020

cc:   counsel of record